# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| CHARLES MAURER, | ) |
|     *Plaintiff*, | ) Case No. 3:20-cv-395 |
| v. | ) Judge Travis R. McDonough |
| LINCOLN MEMORIAL UNIVERSITY, *et al.*, | ) Magistrate Judge Christopher H. Steger |
|     *Defendants*. | ) |

## MEMORANDUM OPINION

Before the Court is Defendants Matthew Lyon, April James, Russell Gordon, Vonda Laughlin, Arlene Amarante, Spencer Anderson, Thatcher Smith, Samantha Hardin, Dan Graves, and Jason Kishpaugh (collectively, the "Individual Defendants"), Lincoln Memorial University ("LMU"), and the Lincoln Memorial University Duncan School of Law's ("DSOL") (collectively, "Defendants") motion to dismiss Plaintiff Charles Maurer's ("Maurer") complaint for failure to state a claim (Doc. 27).[1]  For the following reasons, Defendants' motion to dismiss (Doc. 27) will be **GRANTED**.

**I.     BACKGROUND**

---

[1] As of the date of this order, named Defendants Clayton Hess, William Gill, and Evan Wright have not been served. A show-cause order directing Plaintiff to explain why his suit against these individuals should not be dismissed for failure to effectuate service was entered on December 9, 2020 (Doc. 32).  Plaintiff failed to timely respond to the Court's order.  Accordingly, Defendants Hess, Gill, and Wright were dismissed from this action without prejudice on January 5, 2021 (Doc. 33).

Maurer is a third-year law student at the DSOL. (Doc. 1, at 2, 8.) Maurer has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), Dyslexia, and Dysgraphia, and is prescribed Adderall for his ADHD. (*Id.*) These disorders cause Maurer to speak quickly, sometimes in a "hyper manner," and "cause his mind to move a million miles an hour in a million different directions." (*Id.* at 8.)

Maurer received learning accommodations for his disorders at the DSOL during the summer and fall semesters of 2019, as well as the spring, summer, and fall semesters of 2020. (*Id.*) Maurer's accommodations allow him to have an electronic device in class and permit him additional time on examinations. (*Id.*) To receive his accommodations, Maurer must submit a request each semester. (*Id.*) After the request is approved, Maurer must then receive written signatures from each of his professors acknowledging and accepting the accommodations. (*Id.* at 8–9.) Maurer alleges that this procedure is "prejudicial and discriminatory." (*Id.* at 16.)

Prior to the spring 2020 semester, Maurer did not complete his request for accommodations before classes began. (*Id.* at 8–9.) On January 28, 2020, Maurer was asked to leave Defendant Professor April James's ("James") class because he was looking at the Rules of Professional Responsibility on his cell phone. (*Id.*) Maurer states that, although two other students near him were also using electronic devices, James only dismissed Maurer. (*Id.*) After being dismissed from James's class, Maurer went to the gym to "cool down," which would help "slow down his accelerated thinking caused by his ADHD." (*Id.* at 10.)

After his workout, Maurer went to meet James in her office. (*Id.*) Maurer apologized for being late and stated that he had hurried to her office. (*Id.*) James asked why he had violated her no-cell-phone policy; Maurer explained that his phone was part of his accommodations and that he felt like he had been unfairly singled out. (*Id.*) Maurer alleges that James's response put him

2

on the "defensive because he felt like he was being attacked for having disabilities." (*Id.*) The conversation escalated, during which James made a remark to Maurer about the volume of his speech, and eventually James told Maurer that he needed to get an accommodation through the school to use an electronic device in her classroom. (*Id.* at 10–11.) Maurer applied for the accommodation that same day, and the school granted his request. (*Id.* at 8–9.)

On February 5, 2020, Defendant Matthew Lyon informed Maurer that James had filed an Academic Integrity Complaint (the "AIC") against him regarding their prior conversation. (*Id.* at 11.) Maurer claims this was done with malicious intent and "in retaliation because [James] felt like her authority was being challenged by [Maurer] . . . ." (*Id.*) Maurer alleges that James made a number of "false and defamatory statements" about Maurer in the AIC, such as Maurer coming "within about a foot" of James, exhibiting a physical posture that James found "deliberately threatening, harassing, and intimidating," and cursing loudly at her in a threatening manner. (*Id.* at 11–13, 21.)

As a result of the AIC, the Academic Integrity Committee (the "Committee") began evaluating whether Maurer had violated certain sections of the student code of conduct. (*Id.* at 14, 16.) Maurer claims that the alleged violations themselves are defamatory. (*Id.*) Maurer also alleges that James's complaint was filed "to cause [] Maurer emotional distress, to interfere with his education, and to prevent him from his life-long career aspirations as an attorney." (*Id.* at 14–15.)

On February 12, 2020, Maurer filed an Accessible Education Services Grievance for ADA violations with Defendant Spencer Anderson ("Anderson") regarding the AIC filed against him. (*Id.* at 15.) After six days, Anderson denied Maurer's grievance on the grounds that it did not state a valid claim for harassment, but Maurer then informed Anderson that his claim was for

3

retaliation, not harassment.  (*Id.* at 15–16.)  Anderson denied Maurer's second claim after another six days because Maurer had not requested his accommodations for the semester prior to his conversation with James.  (*Id.* at 16.)  Maurer believes that the length of Anderson's investigation was insufficient to evaluate his grievance.  (*Id.*)

On March 23, 2020, the Committee offered Maurer a "plea deal" to resolve the AIC, which Maurer repeatedly declined to accept, contrary to the urging of numerous school officials and professors.  (*Id.* at 17–18, 20.)  Maurer's hearing before the Committee was conducted on July 31, 2020, and Maurer was suspended from the DSOL.  (*Id.* at 21.)

Maurer maintains that his suspension was an act of "malicious prosecution" for refusing to accept the "plea deal."  (*Id.* at 17, 22–23.)  He also alleges each of the Defendants defamed him.  (*Id.* at 12, 17, 21–22.)  Maurer further alleges several "due process" violations occurred during his academic integrity proceeding.  (*See id.* at 16–23.)  For example, Maurer asserts that he was not provided any notes from interviews conducted during the course of his proceeding (*Id.* at 16) or other requested materials (*Id.* at 16–18, 21–22), and that his hearing before the Committee was improperly delayed for a period of months (*Id.* at 18–20).

Plaintiff sued LMU, the DSOL, and the Individual Defendants in both their individual and official capacities.  (Doc. 1, at 3–5.)  Plaintiff brought the following federal causes of action against all Defendants:  (1) discrimination, retaliation, and harassment under Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"); (2) discrimination, retaliation, and harassment under Titles II and III of the Americans with Disabilities Act of 1990 (the "ADA"); (3) violations of the Fourteenth Amendment and 42 U.S.C. § 1983; and (4) defamation under 28 U.S.C. § 4101.  (*Id.* at 5–7.)  Plaintiff has also alleged state-law claims for malicious prosecution, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional

4

distress, and tortious job interference. (*Id.*) Plaintiff filed a response in opposition to Defendants' motion to dismiss (Doc. 31), and the time for a reply has passed. Defendants' motion (Doc. 27) is now ripe for review.

## II. STANDARD OF LAW

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. For purposes of this determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

5

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court notes that Plaintiff is proceeding in this action *pro se*. The Court is mindful that *pro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 358 (6th Cir. 2012). The Court is "not, [however,] require[d] to either guess the nature of or create a litigant's claim." *See, e.g.*, *Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases, including the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *Whitson v. Union Boiler Co.*, 47 F. App'x 757, 759 (6th Cir. 2002); *Kafele v. Lerner, Sampson, Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005) ("[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity."). Thus, although the standard of review for *pro se* litigants is

6

liberal, it requires more than the bare assertion of legal conclusions. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

### III. ANALYSIS

#### A. Federal Claims

##### *a. Defamation*

As an initial matter, Maurer asserts defamation claims against all Defendants pursuant to 28 U.S.C. § 4101. (*Id.* at 6.) This section defines defamation solely in the context of Title 28, Chapter 181 of the U.S. Code, which recognizes and enforces foreign judgments for defamation. 28 U.S.C. § 4101 (stating that the definitions therein apply "in this chapter"). Maurer has not asked this Court to recognize or enforce a foreign judgment for defamation under Chapter 181, nor has he alleged any facts giving rise to a claim under that chapter. Therefore, Maurer has not stated a claim upon which relief can be granted with respect to defamation under 28 U.S.C. § 4101. Accordingly, Defendants' motion is **GRANTED** on Plaintiff's claim for defamation under 28 U.S.C. § 4101.

##### *b. Americans with Disabilities Act and Rehabilitation Act*

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Title II of ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under Title III, "no individual shall be discriminated against on the basis of disability in the full and equal

7

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." 42 U.S.C. § 12182(a).

The Sixth Circuit has stated that the ADA and the Rehabilitation Act "'share the same substantive standard,' and that is so 'despite the linguistic differences between the two acts.' Thus '[w]e review claims brought under the Rehabilitation Act as we would claims brought under the Americans with Disabilities Act of 1990.'" *Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 849 (6th Cir. 2009) (internal citations omitted). "In short, the principal distinction between the two statutes is that coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while the ADA's reach extends to purely private entities." *McPherson v. Mich. High Sch. Ath. Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997).

a. Individual Defendants

As an initial matter, Maurer may not maintain an action under the ADA or the Rehabilitation Act against the Individual Defendants in their individual capacities because "neither the ADA nor the [Rehabilitation Act] impose liability on individuals." *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *see also Hamilton v. Carson-Newman College*, No. 3:09-cv-479, 2010 U.S. Dist. LEXIS 100388 at *13 (E.D. Tenn. Sept. 23, 2010) (collecting cases). Further, the Individual Defendants may not be sued in their official capacity in this action. Courts regularly dismiss claims against agents in their official capacities as redundant when the principal entity is also named as a defendant in the suit. *See, e.g.*, *Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 140 n.4 (6th Cir. 2003). District courts in this Circuit have applied this same standard to ADA and Rehabilitation Act cases. *See, e.g.*, *Hamilton*, 2010 U.S. Dist. LEXIS at *14-15; *Johnson v. Wash. Cnty. Career Ctr.*, No. 2:10-cv-

76, 2010 U.S. Dist. LEXIS 62597 at *11 (S.D. Ohio June 22, 2010) ("[T]he claims Plaintiff Johnson asserts against Defendant Poling should be treated as claims against Defendant WCCC, as that entity employs Defendant Poling.") Therefore, Defendants' motion is **GRANTED** with respect to Maurer's claims for discrimination, retaliation, and harassment under the ADA and Rehabilitation Act against the Individual Defendants.

### b. LMU and the DSOL

#### 1. Discrimination

To state a claim against an entity for discrimination under the ADA or the Rehabilitation Act, a plaintiff must allege that he is: "1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). Under Title II of the ADA and the Rehabilitation Act, the school must also be a recipient of federal financial assistance, whereas under Title III of the ADA the plaintiff must allege that "the defendant is a private entity that owns, leases, or operates a place of public accommodation." *See S.S.*, 532 F.3d at 453 (giving the standard to "state a claim" under Title II of the ADA and the Rehabilitation Act); *M.G. v. Williamson Cnty. Sch.*, 720 F. App'x 280, 287 (6th Cir. 2018) (same); *Abeyta v. Stonecrest Med. Ctr.*, No. 3:18-cv-386, 2018 U.S. Dist. LEXIS 119947 at *8 (M.D. Tenn. 2018) (discussing the pleading standard under Title III of the ADA).

While Maurer alleges that LMU and the DSOL are organizations which receive "Federal Financial Assistance," he does not allege that either Defendant is a private entity as defined under Title III. (Doc. 1, at 3.) Therefore, Maurer has not adequately alleged that LMU or the DSOL are covered by Title III of the ADA.

Maurer does allege that he is disabled (Doc. 1, at 2, 8), but does not allege how, exactly, LMU or the DSOL are excluding him or how they have subjected him to discrimination based on his disability. Maurer was not denied accommodations for the spring, summer, or fall 2020 terms. (*Id.* at 8.) Maurer states that Defendant James told him he would need an accommodation to use an electronic device in her class, but he does not allege that she denied him use of one entirely. (*Id.* at 8–9.) To the extent Maurer believes the procedure for obtaining accommodations is "discriminatory," he does not identify any factual basis for that claim beyond considering the process cumbersome and uncomfortable. Moreover, Maurer does not allege that LMU or the DSOL has ever denied him an accommodation after he applied for it. (*Id.*) Although Maurer's complaint frequently alleges that the DSOL's accommodation procedures make him feel singled out (*see id.*), his negative feelings alone do not create actionable legal issues.

Maurer also does not claim that his suspension from school was motivated by discrimination against him due to his disability. On the contrary, Maurer states that James filed the AIC against him because she "felt like her authority was being challenged," and that the Committee ultimately expelled him because he refused to accept the "plea deal" they offered. (*Id.* at 11, 17, 22–23.) Similarly, Maurer felt that the twelve-day length of Defendant Anderson's investigation into his grievance for ADA violations was insufficient, but he does not allege facts to support that Anderson refused to investigate or conducted a sham investigation because he was discriminating against Maurer. Maurer also does not allege that he was denied any "due process rights" on the basis of his disability.

Accordingly, the Court finds that Maurer has failed to state a claim for discrimination against LMU or the DSOL because he has not pled sufficient facts to show he is "being excluded

10

from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S.*, 532 F.3d at 453; see also *Lee*, 104 Fed. App'x at 492–93 (affirming dismissal where the plaintiff's complaint "contained no allegations that defendants discriminated against him solely because of his alleged handicap"). Defendants' motion is **GRANTED** with respect to Maurer's discrimination claims under Titles II and III of the ADA and the RA.

### 2. Retaliation

The ADA prohibits retaliation against an individual who has "opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). The Sixth Circuit has found that "[b]oth the ADA and Section 504 prohibit retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise seeking to enforce rights under the Acts," and "for purposes of retaliation analysis, cases construing either act are generally applicable to both." *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696–97 (6th Cir. 2013). Maurer has not pled any facts from which the Court could infer that he has opposed an act or practice made unlawful by the ADA or the Rehabilitation Act.

While requesting an accommodation for a learning disability is certainly protected under the ADA, *see Shelby Cnty. Bd. of Educ.*, 711 F.3d at 698, Maurer was granted his accommodation when he requested it and he has not stated any facts suggesting he was retaliated against for requesting an accommodation. (Doc. 1, at 8–9.) On the contrary, Maurer has continued to receive accommodations approved by his professors. (*Id.* at 8–9 (stating that Maurer must get "signatures of [his] professors" to "individually approve the accommodations,"

11

and that he "received accommodations at LMU DSOL for his disabilities during the summer and fall semesters of 2019, as well as the spring, summer, and fall 2020").) Further, filing ADA grievances plainly constitutes "participating in any manner in an investigation, proceeding, or hearing." Maurer's grievances were investigated by Defendant Anderson when Maurer filed them, albeit not to his satisfaction, but Maurer does not plead that his grievances were not investigated fully as an act of retaliation.

Maurer has not alleged that he performed any other act that could constitute: (1) an opposition to activity made illegal by the ADA or Rehabilitation Act, or (2) participation in an ADA or Rehabilitation Act investigation, proceeding, or hearing. Maurer states that he told James that he should be allowed to use his electronic device in class because of his disability. However, he did not have an accommodation in place at the time. Merely informing someone of a disability is not acting in opposition to an act or practice made unlawful by the ADA, nor does it qualify as asserting a charge under the ADA as to be actionable. *See Tartt v. Tenn. Health Mgmt.*, No. 17-cv-2693, 2018 U.S. Dist. LEXIS 34398 at *8 (W.D. Tenn. Feb. 9, 2018). Maurer also does not allege that James filed the AIC against him in retaliation for Maurer opposing an unlawful act, but rather because he challenged her authority. (Doc. 1, at 8–9.) Similarly, Maurer has not alleged any facts to show that when he refused to accept the "plea deal" offered by the committee, his stated basis for the retaliation that resulted in his suspension, he was acting in opposition to an act or practice made unlawful by the ADA or Rehabilitation Act. (*Id.* at 11, 17, 22–23.) In fact, Maurer states that he refused the deal because he could not accept it in "good conscience" since it was a challenge to his integrity, not because he was opposing an unlawful act. (*See, e.g.*, *id.* at 20–21.) Accordingly, Defendants' motion is **GRANTED** with respect to Maurer's retaliation claims under Titles II and III of the ADA and the Rehabilitation Act.

### *3. Harassment*

Sixth Circuit caselaw is sparse with respect to allegations of teacher-on-student harassment under the ADA or Rehabilitation Act, but at least one other district court in this circuit applied the same standard used in peer-to-peer harassment cases when evaluating a motion for summary judgment. *See K.C. v. Cnty. Schs.*, 306 F. Supp. 3d 970, 977 (W.D. Ky. 2018), *aff'd sub nom K.C. v. Marshall Cnty. Bd. of Educ.*, 762 F. App'x 226 (6th Cir. 2019). Under that standard, Maurer must allege facts plausibly suggesting that: (1) he is an individual with a disability; (2) he was harassed based on that disability; (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment; (4) LMU and the DSOL knew about the harassment; and (5) LMU and the DSOL were deliberately indifferent to the harassment. *See id.*; *see also Hoffman v. Saginaw Pub. Schs.*, No. 12-10354, 2012 U.S. Dist. LEXIS 88967 at *38 (E.D. Mich. June 27, 2012) (applying this standard in the context of a motion to dismiss for claims of peer-to-peer harassment).

The Court acknowledges that a pleading standard for a cause of action and the elements of its prima facie case are not necessarily identical. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)); *Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 493 (6th Cir. 2017)). However, even if the Court were to assume that the pleading standard for harassment was more lenient relative to the elements of a prima facie case for harassment, Maurer has not pled any facts whatsoever that plausibly suggest he was harassed on the basis of his disability. He does not allege any specific harassing acts, who allegedly committed such harassing acts, or when such harassing acts allegedly occurred. Therefore, Maurer cannot have plausibly suggested that he suffered

13

harassment under the ADA or Rehabilitation Act. In fact, the only factual mention of harassment in Maurer's complaint is when he told Defendant Anderson that he was *not* filing a grievance to investigate harassment by the school, but rather retaliation. (Doc. 1, at 15.)

Alternatively, to the extent that Maurer seeks to base his harassment claim on an alleged hostile learning environment, similar to a hostile work environment claim in the employment context (*see, e.g.*, *Trepka v. Bd. of Educ. of the Cleveland City Sch. Dist.*, 28 F. App'x 455, 461 (6th Cir. 2002)), Maurer has not provided, and the Court cannot find, any law suggesting that such a cause of action exists in the Sixth Circuit. *See also Junhe Qiu v. Univ. of Cincinnati*, No. 1:18-cv-634, 2019 U.S. Dist. LEXIS 95380 at *15 (S.D. Ohio June 6, 2019) ("[T]he Court has not found[] any federal cases within the Sixth Circuit that recognize a hostile environment claim under the ADA or Rehabilitation Act."). Accordingly, Defendants' motion is **GRANTED** with respect to Maurer's harassment claims under Titles II and III of the ADA and the Rehabilitation Act.

### c. Fourteenth Amendment and § 1983

To prevail on a § 1983 claim, "a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358–59 (6th Cir. 2001) (citation omitted). Similarly, violations of the Fourteenth Amendment must be triggered by state actors. *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Additionally, "the issue of whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process has not been resolved. Courts have avoided this issue where possible by assuming for the sake of argument that such an interest exists." *McGee v. Schoolcraft Cnty. College*, 167 F. App'x 429, 437 (6th Cir. 2006).

Maurer's complaint at most alleges that LMU and the DSOL receive federal funding; he does not allege that any of the Defendants were acting under the color of state law or that any Defendant was a state actor for purposes of the Fourteenth Amendment and § 1983. Further, Sixth Circuit precedent suggests that even if Maurer is afforded due process rights under the Fourteenth Amendment, he has not alleged any due process violations rendering his suspension proceeding unconstitutional because he was offered a chance to avoid his suspension from the DSOL by accepting the plea deal. *See McGee*, 167 F. App'x at 429 ("The internal process which Plaintiff assailed as constitutionally inadequate resulted in SCC repeatedly offering her an opportunity to be reinstated in the OTA program . . . The fact that the terms were not acceptable to Plaintiff does not change the fact that SCC offered to restore to her the property interest she claims she was deprived of, her continued enrollment.")

To the extent that Maurer's claims of malicious prosecution and abuse of process can be interpreted as allegations under § 1983, they cannot succeed because Maurer has not alleged facts to support that any Defendant is a state actor or acting under the color of state law. Accordingly, Maurer has failed to state a claim under the Fourteenth Amendment or § 1983. Defendants' motion is **GRANTED** with respect to these claims.

### B. Non-Federal Claims

Maurer alleges causes of action against all Defendants for: (1) malicious prosecution; (2) abuse of process; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) tortious job interference. (Doc. 1, at 5). Maurer explicitly notes that the court has federal question jurisdiction over his ADA and Rehabilitation Act claims, and that "[s]upplemental jurisdiction of all other offense [sic] is appropriate because they arise out of the same incidents involved in the violations of the federal question[s]." (Doc. 1, at 5.)

15

Accordingly, to the extent they are not addressed above, the Court will proceed under the assumption that Maurer's remaining claims are pled under state law.

When parties are non-diverse, as here, this Court may only hear state-law claims through the exercise of supplemental jurisdiction. 28 U.S.C. § 1367. District courts have the discretion to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."). Because all federal claims will be dismissed by virtue of the Court's ruling on Defendants' motion to dismiss, the Court will decline to exercise jurisdiction over Maurer's remaining state-law claims.

Continuing to exercise supplemental jurisdiction should only be done "in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [ ] concern over needlessly deciding state law issues." *Id.* (citation and internal quotation marks omitted). When "all federal law claims are eliminated before trial, the balance of factors to be considered under pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The factors set forth in 28 U.S.C. § 1367 weigh against exercise of supplemental jurisdiction over Maurer's remaining state-law claims. The Court finds that the interests of judicial economy and abstention from needlessly deciding state-law issues weigh in favor of declining to exercise supplemental jurisdiction over these claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Rule 12(b)(6) motion to dismiss (Doc. 27) is **GRANTED**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**